McMILLAN, Respondent, vs. PAGE, Appellant.

*April 20 — May 12, 1888.*

*Master and servant: Compensation: Implied contract.*

The plaintiff, when a young girl, entered the home of defendant, a stranger to her, as a hired servant for a fixed period. For years after the expiration of that period she continued to work for him without receiving other compensation than a home, board, and clothing. *Held*, that in the absence of any express agreement to the contrary, the law would imply a promise on the part of the defendant to pay her for such services what they were reasonably worth.

APPEAL from the Circuit Court for *Columbia* County. The case is stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Rogers & Hall* and *Geo. W. Bird,* and oral argument by *Mr. W. H. Rog-*

*ers* and *Mr. Bird.* They contended, *inter alia*, that the court erred in relieving plaintiff of the burden of proving an express agreement that she was to receive something in addition to board, clothing, etc., and in casting upon the defendant the burden of proving an express agreement that she was to receive nothing in addition to board, clothing, etc. A person making another's house his home as a member of the latter's family, can recover for services only upon proving an express contract to that effect by positive and direct evidence. And the burden is upon the party claiming the compensation to prove the contract by *such* evidence. Clear and satisfactory evidence may be neither. *Fisher v. Fisher*, 5 Wis. 472; *Mountain v. Fisher*, 22 id. 93; *Kaye v. Crawford*, id. 320; *Hall v. Finch*, 29 id. 278; *Pellage v. Pellage*, 32 id. 136; *Wells v. Perkins*, 43 id. 160; *Geary v. Geary*, 67 id. 248; *Cowan v. Musgrave*, 35 N. W. Rep. (Iowa), 496; *McGarvey v. Roods*, id. 488; *Smith v. Myers*, 19 Mo. 433; *Maltby v. Harwood*, 12 Barb. 473; *Andrus v. Foster*, 17 Vt. 556; *Wilhelm v. Hardman*, 13 Md. 140; *Stone v. Dennison*, 13 Pick. 1; *Hays v. McConnell*, 42 Ind. 285.

For the respondent the cause was submitted on a brief by *John S. Maxwell.*

ORTON, J. The plaintiff's claim is for work and labor from October 1, 1879, to December 1, 1885, for $100 for the first year, and $200 for the subsequent years. The plaintiff, at the commencement of such work and labor for the defendant, was only sixteen years of age. Her mother had died, and her father had neglected to support or care for her, and she was dependent upon her own labor for support, when she commenced to work out in the city of Chicago at her own instance and without interference of her father; and she so worked about four years, when she came to her uncle's at Fall River in this state, where she had a home, in

the spring of 1879, and where and when the defendant came and employed her to work for him for the ensuing summer. For such service the defendant paid her at the rate of ten shillings per week. He then employed her, as she alleges, to continue to work for him for an indefinite time, and agreed to pay her well when she got through, and she continued in his service until late in the fall of 1885. The defendant in his answer alleges, in effect, that the agreement was that the plaintiff should have a home with him, and that he should board, clothe, and care for her in sickness, and pay her doctor bills, as long as she saw fit to live with him, and that she should work for him according to her ability as the full and entire consideration of and complete compensation for such home, board, clothing, and care in sickness, and that beyond that he should pay her nothing for her labor.

The defendant was a single man, about fifty years of age, and owned and conducted a farm of 260 acres, and kept house thereon with a housekeeper. The plaintiff testified, substantially, that during the first summer she worked part of the time on the farm, and part of the time in the house; and that after she and the defendant settled and she received her ten shillings per week, the defendant said to her that he would like to have her stay with him right along, and that he would pay her well when she got through, and that she stayed and worked under that contract six years. The first winter she worked in the house most of the time. In the spring she plowed and dragged until the crops were in, and then she worked in the corn until harvest, and then worked in harvest on the harvester, and then did fall plowing and husked corn. In 1883, she plowed about 100 acres, and in 1884 about 120 acres, and in 1885 about 100 acres. She worked three horses all the time. She generally got to her work, in the spring, summer, and fall, at 4 o'clock in the morning, and her breakfast was sent to her in the field.

She sometimes plowed until 10 o'clock at night, and some-times all night by changing teams, and worked all the next day, late in the fall. She had good and suitable clothing when she commenced to work for the defendant, and when they were worn out she was clothed with coarse, stout cloth, called "demings," the same as men's overalls. She was strong and healthy, and never needed a doctor. In this way she continued until December 1, 1885, and then quit work and asked the defendant to pay her for her labor, and he refused to pay her anything except to offer her an acre of beans. She thinks she received, during her term of service, in all, about $15. She sometimes asked for a few dollars, and was refused. One of the defendant's neighbors, whose land adjoined his own, testified that the plaintiff worked for the defendant about six or seven years, doing all kinds of farm work, such as plowing, dragging, working in harvest, binding, pitching bundles, etc.; that he employed hired men on his farm; and that she did as much as a man, and her services were worth $200 per year; and that the defendant said that his women could do as much work as his men, and that he would rather hire them because he could get them cheaper. Another adjoining neighbor testi-fied that she did as much work as a man in all kinds of farm work, and that the defendant told him that he could not afford to hire men, and that he could get women cheaper, and get more out of them; and she worked for de-fendant over six years, and her services were worth $200 per year. Another adjoining neighbor testified the same as to her labor and the time she worked for the defendant, and that the defendant said to him that his girl could do more work than his man, and asked how much he paid, and then said that he, the witness, paid too much, and that he could hire women cheaper, and that he should pay the plaintiff all he possibly could.

In view of the hard, rough, and constant work out of

doors, exacted of this poor young girl, under the guise and pretext of giving her a home and boarding and clothing her suitable to her sex and condition, the conclusion is almost irresistible that the defendant violated, in both letter and spirit, the very agreement that he alleges in his answer, and upon which he relies in defense of her action. Is that the kind of a *home* he agreed to give her? Is that boarding and clothing her suitable to her age and sex? Were such the female services she was to render as the consideration for such advantages, or for such "privileges of a home," as they are called in the defendant's answer? Most emphatically not.   Although this view of the case is not urged by the learned counsel of the respondent, yet it. stands out in such bold relief, and is so apparently conclusive against the defense set up in the defendant's answer, that I could not help noticing it as preliminary to the consideration of the contract which the plaintiff alleged as the foundation of her action.   If this view of the case had been. taken by the court and the jury, it might have appeared. as a sufficient reason for the verdict.   Such unusual, unnatural, and most unsuitable work and labor that she did for the defendant were clearly not within the reasonable intent and meaning of the contract which the defendant alleges in his defense to her action.   They rest, therefore, upon a *quantum meruit,* if the plaintiff has not established any other agreement than that alleged by the defendant.

But the contract, as stated by the plaintiff, was sufficiently proved by her own testimony, so corroborated by the testimony of her witnesses.   The defendant testified that the only contract made was the one set up in his answer, and there was some evidence that the plaintiff had made statements to the same effect.   The jury had the right to believe the plaintiff.   The father of the plaintiff left her to hire herself out, receive her own wages, and generally to take care of herself, at a very feeble age and when she was

a mere child, and deserted and abandoned her. He had given her her own time as if she were of age, and had to all intents and purposes emancipated her, as the jury found. But, after the plaintiff had so hired herself out, as she testified, this unnatural father appeared upon the scene. He visited her in the field where she was at work. He had an interview with the defendant at his house. An agreement in writing is made between them, to the effect that the father leaves the plaintiff, as his "daughter *Anna*," with the defendant for one year, with the privilege of his keeping her five years if he chooses, and to let her work for her board and clothes as long as she remains in his employ, and in case she goes away he gives the defendant power to take her and bring her back if she could be found. But that is not all. The defendant about the same time prepared a written proposition and signed it, to the effect that he would give the plaintiff a home, and board, clothe, and pay her doctor bills as long as she remains *in his home* peaceably, and when she leaves she can take only what belongs to her, and that he will not look after her any further, or pay any bills, etc. This written proposition appears in evidence, with the plaintiff's written acceptance and consent appended thereto; and the defendant testified that she signed it, and his testimony is corroborated by that of his housekeeper, one Mrs. Lord. But the plaintiff most positively testified that she never signed it, and that she never consented that her father should "bind her out," or contract with the defendant for her services. The jury found that she did not sign it, and they had the right to believe her if they chose to do so. The jury found, further, that the plaintiff made no such agreement as the defendant had alleged in his answer, and that no part of her services were rendered under any such understanding; and they assessed the plaintiff's damages at $800. The court rendered judgment upon this special verdict for the plaintiff.

This is really all there is of this case. There are no exceptions to the admission of evidence, and the only exceptions are to the instructions of the court to the jury, in effect as follows: (1) That this is not a case where a party claiming the compensation has the burden of proving an express agreement for compensation, in addition to home, board, clothing, etc.; (2) that the burden was upon the defendant to prove an express agreement that the plaintiff was to receive only a home, board, clothing, etc.; (3) that the jury might assess damages for the whole time from October, 1879, to December, 1885, if they found that she was entitled to recover for the whole amount of that time.

The first two exceptions embrace really but one legal proposition, and that is whether the relations between the parties were such that the plaintiff must prove an express contract to recover for her services. If the principle can ever be extended to embrace strangers, or those not of kindred relationship, as members of the same family, which may be doubtful, most certainly there should be such circumstances of family relationship as would imply that the plaintiff's services should be gratuitous. But in this case the plaintiff was an entire stranger to the defendant, and was not a member of his family until she was employed by him to work for a compensation; and when that time of employment was at an end she continued to work for him in the same general way but more laboriously. And if she did so without any express agreement, the law would imply from their former relations a promise on his part to pay her therefor what her services were reasonably worth. In other words, she was not a member of his family except as a hireling; and if she continued in his family the law would imply that she was still a hireling. There was nothing to create any other relation between them except that of employer and employee. Her being a minor cuts no figure in the case; for the defendant employed her first as if she had

been of age and of full self-control, capable of contracting and being contracted with. Indeed, minority has nothing to do with the question as to whether kindred of the same family can recover compensation of each other for personal services. The same obligation to render to each other gratuitous service continues beyond minority. The authorities cited by the learned counsel of the appellant are inapplicable to the case. There is absolutely nothing in this case that should take it out of the general rule of one person doing work and labor for another to be compensated by the rule of *quantum meruit*.

It follows, therefore, that if the defendant wishes to take this case out of the general rule he must prove an express agreement to that effect, or that the plaintiff should receive only, as compensation, her board, clothing, and medical care, according to his answer. But, again, there is no such question in this case. The pleadings must determine the attitude of the parties to each other. The plaintiff seeks to recover by proof of an express contract of employment, and the defendant seeks to defeat her action by proof of an express contract, not that he did not hire or employ her to work for him, but to work for him for the compensation only of a home and of board, clothing, and care in sickness. The jury found the contract as alleged by the plaintiff, and that no such contract as alleged by the defendant was ever made; and that was the real issue between the parties. The question of gratuitous service in consequence of family relationship is not in the case.

The third exception, as stated in the brief of the defendant's counsel, is modified by the full instructions of the court as to the time for which the plaintiff might recover. It is guarded by all proper conditions, so that the jury could find for the whole time' or any part of it, and make proper deductions. We cannot see any objection to that part of the charge, or, indeed, to any part of it. The whole case was

submitted to the jury very fully and impartially, and we think correctly. If there was any seeming error in the proceedings it was quite immaterial, and may well be disregarded as not affecting the substantial rights of the appellant. Sec. 2829, R. S. The case made for the plaintiff on the evidence has great merit, and the defense was rather technical than substantial, if not unconscionable. We have stated the facts more fully, that the merits of the case may be apparent, and to show the real bearing of the exceptions, as the point is made that the verdict is not supported by the evidence, with a view of obtaining a new trial.

*By the Court.*— The judgment of the circuit court is affirmed.